### MID–AMERICA DAIRYMEN, INC., Plaintiff,

v.

### John S. HERRINGTON, Secretary of Energy, Defendant.

### Civ. A. No. 88–2041.

United States District Court,
D. Kansas.

June 29, 1988.

Wayne H. Hoecker, Gage & Tucker, Kansas City, Mo., Albert F. Kuhl, Gage & Tucker, Overland Park, Kan., for plaintiff.

Stephen C. Skubel, U.S. Dept. of Energy, Office of the General Counsel, Washington, D.C., for defendant.

## OPINION AND ORDER

THEIS, District Judge.

This matter is presently before the court on cross motions for summary judgment. Plaintiff filed this action under the Administrative Procedure Act, seeking a reversal of the Department of Energy's (DOE) dismissal of plaintiff's Subpart V crude oil refund claim. This action was reassigned to this court from the Honorable Dale E. Saffels since the case is related to this court's *In re: The Department of Energy Stripper Well Exemption Litigation*, M.D.L. No. 378 (D.Kan.). The court finds it unnecessary to set forth the well established standards governing motions for summary judgment.

The following facts are uncontroverted.

1. Plaintiff Mid–America Dairymen, Inc., (Mid–America) owns more than 49% of the capital stock issued by Roberts Dairy Company (Roberts).

2. On December 5, 1986, Roberts submitted to DOE's Office of Hearings and Appeals (OHA), the Escrow Administrator appointed by this court to determine Surface Transporters (ST) refund claims, an ST Claim Form and Waiver, executed by its president, Randall E. Winters.

3. The ST Claim Form and Waiver included a waiver and release of any claims by Roberts and "its parents, subsidiaries, affiliates, successors, and assigns" to crude oil refunds under the DOE's Subpart V procedures, 10 C.F.R. Part 205, Subpart V.

4. In the ST Claim Form and Waiver, Roberts further agreed "to be bound by the Settlement Agreement" as though Roberts had executed the Agreement itself.

5. Paragraph VI.A of the Final Settlement Agreement in *In re: The Department of Energy Stripper Well Exemption Litigation*, M.D.L. No. 378 (D.Kan.), defines the term "affiliate" as including a firm "which controls, is controlled by or is under common control with" a person executing a waiver and release. The term "control" is defined as including the ownership of more than 49% of the shares of stock of a corporation.

6. On May 1, 1987, plaintiff Mid–America filed an application for a crude oil refund under the Subpart V regulations.

7. On October 28, 1987, OHA issued a Decision and Order approving a refund from the ST Escrow to Roberts based upon its purchase of 4,237,036 gallons of petroleum products. In that same Decision and Order, OHA dismissed Mid–America's Subpart V application based on OHA's finding that Roberts had waived the Subpart V claim by its participation in the ST proceedings. *Roberts Dairy Co.*, 16 DOE ¶ 85,573 (1987).

8. On November 23, 1987, Mid–America filed a motion for reconsideration of OHA's dismissal of its Subpart V claim. On January 17, 1988, OHA denied the motion for reconsideration. *Mid–America Dairymen, Inc.*, 17 DOE ¶ 85,015 (1988).

9. Mid–America acquired the issued and outstanding capital stock of Roberts in December 1980. The stock was purchased for the sum of $10 after Roberts did not pay for unprocessed milk it had received from Mid–America.

10. Shortly thereafter, Robert Quinn, an individual selected by Mid–America, was employed by Roberts as its general manager and chief operating officer.

11. Approximately June 1981, Roberts was reorganized by a merger of two other

corporations. Following the merger, Prairie Farms Dairy, Inc. (Prairie Farms) owned approximately 50% of the issued and outstanding voting stock of Roberts. Under an agreement, Prairie Farms assumed the responsibility for managing the day-to-day business of Roberts. Mr. Quinn was no longer employed by Roberts.

12. The Roberts board of directors has ten members. Two of the members are also members of the Mid–America board of directors.

13. As of the date of its last balance sheet, Roberts was financed by approximately $12,158,000 in equity capital. The ratio of equity to assets was approximately 53.6%. At that time, it had no interest-bearing debt.

14. Roberts maintains separate accounting records, prepares separate financial reports and has its own independent auditing firm.

15. Roberts prepares and files separate income tax returns.

16. Roberts' management functions with a high degree of autonomy and is responsible for the achievement of its business goals.

17. Roberts buys approximately 41 million pounds of unprocessed milk each month. Mid–America sells approximately 90% of the unprocessed milk received by Roberts. Mid–America sells approximately 270 million pounds of unprocessed milk per month for use by fluid milk processors such as Roberts. Roberts purchases approximately 13.7% of the unprocessed milk sold by Mid–America for use in fluid products.

18. Roberts is engaged in the business of processing, packaging and distributing fluid milk and other dairy products. Roberts sells fluid milk and other dairy products at wholesale primarily to grocery stores and the institutional trade.

19. Roberts does not act as an agent for Mid–America. Roberts does not hold itself out as a subsidiary or agent of Mid–America.

20. Roberts employs the individuals required to operate its business. Prairie Farms provides management oversight and assistance. Mid–America is not involved in the day-to-day operations of Roberts.

The parties do not agree on the legal standards which should govern this case. The defendant argues for the very limited standard of review set forth in this court's order establishing the ST Escrow. *In re: The Department of Energy Stripper Well Exemption Litigation,* M.D.L. No. 378 (D.Kan., Aug. 7, 1986) [1986 WL 11267]. That order provides:

> From a determination by the Escrow Administrator [OHA], there shall be no appeal, provided that the Escrow Administrator will provide an opportunity to claimants to seek reconsideration. A Surface Transporter Claimant shall have no other remedy save and except an application to this Court upon the ground that a determination by the Escrow Administrator was made in bad faith and seeking the correction thereof. No other correction or adjustment to any determination by the Escrow Administrator or any other remedy or payment will be considered or made by this Court.

*Id.* ¶ 19. Defendant argues that, since plaintiff's complaint fails to allege bad faith on the part of OHA, summary judgment in his favor is appropriate.

Plaintiff argues that this case is instead governed by the provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), which allows the court to set aside any agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ..." The court does not need to decide this issue, however, since OHA's decision regarding plaintiff's Subpart V claim can be upheld under either standard of review.

The court agrees with defendant that Mid–America has failed to allege any bad faith on the part of OHA. Applying the bad faith standard of review to OHA's actions, the court would uphold OHA's decision. In addition, Mid–America has alleged no action by OHA which could be construed as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Rather, OHA's actions

in the present case are consistent with a prior ruling of this court. *In re: The Department of Energy Stripper Well Exemption Litigation*, 707 F.Supp. 1267 (D.Kan.1987). A summary of that order will be helpful.

Boise Cascade Corporation and several other entities filed motions for review of certain decisions of OHA in the ST and Rail and Water Transporters (RWT) refund proceedings. The movants alleged that OHA erred in denying their Subpart V refund claims. OHA had denied the Subpart V claims on the ground that the movants had waived their right to participate in the Subpart V proceedings through their own or their affiliates' participation in the ST and RWT Escrows. OHA held that the plain language of the ST and RWT Claim Forms and Waivers notified the persons who executed the documents that they were waiving the Subpart V claims of their own companies and all affiliated companies.

The court denied the motions for review and upheld OHA's decisions. The court rejected each of the movants' arguments and enforced the waivers according to their plain language. The waiver of Subpart V claims was expressly made binding upon the ST or RWT refund applicant, "its parents, subsidiaries, affiliates, successors and assigns." The persons who executed the waivers stated under penalty of perjury that they were duly authorized to execute the waivers and they acknowledged that they were binding not only the applicant but also all affiliated entities.

In its decision on plaintiff's Subpart V application, OHA followed this court's December 7, 1987 Opinion and Order. *See Mid–America Dairymen, Inc.*, 17 DOE ¶ 85,015, at 88,029–30 (1988) (quoting *In re: The Department of Energy Stripper Well Exemption Litigation*, M.D.L. No. 378 (D.Kan., Dec. 7, 1987)). It is undisputed that Mid–America is an "affiliate" of Roberts due to Mid–America's ownership of more than 49% of the outstanding stock of Roberts. The plain language of the Claim Form and Waiver executed by Roberts put Roberts on notice that it was also waiving Mid–America's Subpart V refund claim.

The court does not find it arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law for OHA to follow this court's ruling. Rather, the court finds that OHA acted in accordance with the law. OHA's decision in the present case was entirely reasonable in light of this court's prior ruling.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion for summary judgment is hereby denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is hereby granted. The Clerk is directed to enter judgment in favor of the defendant.