In re the DEPARTMENT OF ENERGY STRIPPER WELL EXEMPTION LITIGATION.

MOBIL OIL CORPORATION, et al., Plaintiffs,

v.

UNITED STATES DEPARTMENT OF ENERGY, et al., Defendants.

M.D.L. No. 378.

Civ. A. No. 78–1070.

United States District Court, D. Kansas.

Aug. 13, 1990.

See also 743 F.Supp. 1476.

---

MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the motion of third party defendant Koch Industries, Inc. to dismiss the third party complaint (Doc. 1535) and on cross motions for summary judgment filed by plaintiff/third party plaintiff Mobil Oil Corporation (Doc. 1698) and third party defendant Koch Industries, Inc. (Doc. 1697).

Following the filing of a counterclaim against it by the United States on behalf of the Department of Energy (DOE), plaintiff Mobil Oil Corporation (Mobil) filed an answer and third party complaint against, among others, Koch Industries, Inc. (Koch). Mobil alleges that it is a New York corporation with its principal place of business in New York and that Koch is a Kansas corporation with its principal place of business

in Kansas. Doc. 1493 ¶¶ 9, 15. Mobil alleges subject matter jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332. Doc. 1493 ¶ 6. The court notes that Koch has made no objection to subject matter jurisdiction, personal jurisdiction, or venue.

Mobil's third party complaint alleges that Koch, through its division Koch Oil Company, was a purchaser of crude oil from Mobil-operated properties located in Oklahoma, that Koch assumed responsibility for severance tax payments on the incremental value of stripper well oil that Koch purchased from those Mobil-operated properties, that Koch Refining Company, a subsidiary of Koch, was a party to the Final Settlement Agreement reached in this case, and that Koch withheld or failed to timely deposit into the M.D.L. 378 escrow sums attributable to the incremental value of the stripper well oil, including funds paid to the State of Oklahoma as severance taxes. Doc. 1493 ¶¶ 63–66. Mobil prayed for a judgment that Koch was liable to it for any deposits of principal or interest to the M.D.L. 378 escrow which it was required to make on Koch's account.

The court has previously granted the DOE's motion for summary judgment and ordered that judgment be entered against Mobil in an amount in excess of $10,000,-000. The court recently denied Mobil's motion for reconsideration. Mobil asserts in its motion for summary judgment against Koch that $3,080,945 (computed as of September 30, 1989) of the $10,000,000 judgment is attributable to Koch's retention of a severance tax refund received from Oklahoma and Koch's delayed payments of principal (i.e., the stripper price increment) into the escrow.

The court will first address Koch's motion to dismiss. The standards governing consideration of a motion to dismiss for failure to state a claim upon which relief can be granted are clearly established. Motions to dismiss are disfavored: a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the factual allegations of a complaint must be taken as true and all reasonable inferences must be indulged in favor of the plaintiff. *Mitchell v. King,* 537 F.2d 385, 386 (10th Cir.1976). Pleadings are to be liberally construed. *Gas–a–Car, Inc. v. American Petrofina, Inc.,* 484 F.2d 1102, 1107 (1973). The question is not whether a plaintiff will ultimately prevail, but whether he is entitled to offer evidence in support of his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Koch argues that no substantive right to contribution exists under the Economic Stabilization Act (ESA), no right to contribution should be implied under the ESA, and that Kansas law does not provide a right to contribution; that Mobil's joinder of Koch is improper absent a right to contribution; that Mobil is not entitled to restitution under federal law or Kansas law; that the Final Settlement Agreement does not create any rights Mobil can enforce against Koch; and that Mobil's claims are barred by the statute of limitations.

The court will first address Koch's joinder argument. Koch argues that joinder is improper under Rule 14 because Koch is not liable to Mobil for all or part of the DOE's claim against Mobil. Fed.R.Civ.P. 14(a); *see* Fed.R.Civ.P. 14(b) (when a counterclaim is asserted against a plaintiff, the plaintiff may bring in a third party under the circumstances which would entitle a defendant to bring in a third party under Fed.R.Civ.P. 14(a)). This argument hinges on whether Mobil has stated a claim against Koch upon which relief can be granted. The court thus turns to Koch's remaining arguments regarding Mobil's claims.

Koch argues that there is no substantive right to contribution under the Economic Stabilization Act (ESA), 12 U.S.C. § 1904 note, and that no right should be implied under the ESA. Mobil responds that it is not pursuing any claims under the ESA. *See* Mobil's Response to Koch's Motion to Dismiss, Doc. 1595, at 20.

Koch argues that the Final Settlement Agreement contains no rights which may

be enforced against Koch. The court agrees. The FSA provides that:

A Party who is not otherwise a party to M.D.L. 378 shall not become or be considered a party to M.D.L. 378 by reason of having executed this Agreement nor shall execution hereof be probative of making any Party a party to M.D.L. 378, although all Parties are bound by the terms of this Agreement and agree to be bound by an order of the District Court approving and enforcing the Agreement.

FSA ¶ II.A.1. The FSA further provides that "any Party may enforce this Agreement against any other Party ..." FSA ¶ VI.B. However, the FSA does not impose monetary liability on any party to M.D.L. 378:

Nothing in this Agreement may be read to enlarge, abridge, limit or otherwise affect the ability of the parties to M.D.L. 378 to litigate the issues remaining in M.D.L. 378 concerning the determination and collection of the amount of remaining liability, if any, of any party to M.D.L. 378 for counting injection wells to qualify a property as a stripper well property, ...

FSA ¶ II.A.6. Nothing in the FSA can be read to impose liability to the escrow on Koch. *See also* 739 F.Supp. 1449, 1455 (D.Kan.1990) (granting Oklahoma's motion to dismiss; FSA does not resolve the issue of what funds are owing to the escrow or from whom; no provision in the FSA to enforce against Oklahoma).

Koch also argues that no federal common law right to contribution or restitution exists. Koch argues that no right to contribution exists since Koch did not participate with Mobil in any wrongdoing and that no right to restitution should be implied. Mobil's third party complaint alleges that Koch withheld or failed to timely deposit into the court's escrow sums attributable to the incremental value of the stripper well oil. Taking Mobil's allegations as true, the court is unable to state that Mobil can prove no set of facts entitling it to relief on its claim for either contribution or restitution. If Koch intentionally withheld sums which were owing to the M.D.L. 378 escrow, to which Koch was not entitled, and for which Mobil has been held liable,

Mobil may be entitled to relief as a matter of federal common law. *See Exxon Corporation v. Jarvis Christian College*, No. TY–80–432–CA, —— F.Supp. —— (E.D.Tex. Aug. 25, 1989) (recognizing a federal common law action for reimbursement from royalty and working interest owners). Given this resolution of the issue, the court does not address Koch's arguments based on Kansas law of contribution and restitution.

Koch's final argument is that Mobil's claims are barred by the statute of limitations. Koch's last purchases of oil from Mobil-operated properties occurred in July 1981. Koch argues that the three year statute of limitations for actions based on implied contracts, K.S.A. 60–512, bars this action. Koch fails to address when Mobil's claims accrued and whether any basis exists for equitable tolling of the statute of limitations. The court cannot rule that Mobil's complaint is time barred. Accordingly, Koch's motion to dismiss shall be denied.

The court now turns to the cross motions for summary judgment. The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judg-

ment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2552 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the non-moving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R. Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

For the purposes of the cross motions for summary judgment, the following facts are uncontroverted. To the extent that Koch failed to properly support its statement of disputed facts with citations to the record, those facts are deemed admitted. D.Kan. Rule 206(c).

1. Federal Energy Administration Ruling 1974–29 prohibited the inclusion of injection wells in certifying properties as stripper wells.

2. In December 1976 the first suit challenging the validity of Ruling 1974–29 was filed in this court by another plaintiff and styled *Braden–Zenith, Inc. v. Federal Energy Administration.*

3. That initial case was consolidated with *Energy Reserves Group v. Federal Energy Administration* for briefing on motions for preliminary injunctions.

4. On June 16, 1977, the court granted the plaintiffs' request for preliminary injunction, enjoining the FEA (now the DOE) from enforcing Ruling 1974–29 against the plaintiffs.

5. The *Energy Reserves* injunction provided that:

IT IS FURTHER ORDERED that, the plaintiffs shall pay or cause to be paid, to the Clerk of the United States District Court for the District of Kansas, at Wichita, Kansas, the difference between the price received for crude oil sold pursuant to any and all certifications of a property as a stripper well property and the price for which such crude oil would have been sold had the same been sold pursuant to a certification of the property as a non-stripper property.

6. Mobil filed this lawsuit on February 4, 1978 to invalidate the Ruling and to enjoin DOE from imposing civil or criminal penalties against Mobil for violation of the Ruling. Koch was not a party to the Mobil–DOE lawsuit.

7. On March 23, 1978, the DOE's Office of Enforcement issued a notice of intent to continue enforcement of Ruling 1974–29 pending final judicial resolution of the *Energy Reserves* cases on appeal, except against companies specifically protected by an injunction.

8. On September 6, 1978, the court issued an injunction in favor of Mobil, enjoining DOE's enforcement of the Ruling against Mobil.

9. Mobil's injunction required Mobil to: pay, or cause to be paid, to the Clerk of the United States District Court for the District of Kansas, at Wichita, Kansas, the difference between the price received for crude oil pursuant to any and all certifications of a property as a stripper well property and the price for which such crude oil would have been sold had the same been sold pursuant to a certification of the property as a non-stripper property.

10. By letters dated September 12, 1978, Mobil transmitted stripper certifications based on counting injection wells and notified all royalty and working interest owners of this court's injunction.

11. From August 1978 through January 1981, Mobil included injection wells in certifying crude oil produced from the North Alma Deese Unit and the Putnam Oswego Unit as stripper well oil. That oil was sold to Koch by the owners at the stripper well price.

12. From August 1978 through April 1980, Mobil included injection wells in certifying crude oil produced from the R.E. Farris Unit as stripper well oil. Mobil sold the oil to Koch at the stripper well price.

13. From August 1978 through February 1980, Mobil included injection wells in certifying crude oil produced from the E. James Unit as stripper well oil. Mobil sold the oil to Koch at the stripper well price.

14. Koch was the first purchaser of crude oil from Mobil-operated stripper well properties in Oklahoma.

15. Koch paid stripper well prices for crude oil produced and sold from the North Alma Deese, Putnam Oswego, R.E. Farris, and E. James properties.

16. In a series of letters, Mobil sent Koch stripper certifications on the following Oklahoma properties: E. James, Putnam Oswego Unit, and North Alma Deese Unit. These letters all provided in pertinent part:

On September 6, 1978, Mobil received an injunction from the United States District Court for the District of Kansas protecting it from civil and criminal penalties for violation of Ruling 1974–29 during the pendency of the appeal of the *Energy Reserves* case. Enclosed is a copy of the injunction dated September 6, 1978 in which the Court directs payment to the Clerk of the Court the difference between stripper and non-stripper revenues attributable to properties certified as stripper by the inclusion of injection wells. If you distribute proceeds to the interest owners in this property or any portion of this property, these payments should be made based on the value computed as a non-stripper property. The difference between this value and the stripper value should be remitted to Mobil for payment into the Court. If you normally remit 100% of the proceeds to Mobil for further distribution, please re-

mit to Mobil values computed at stripper prices, as Mobil will be paying into the Court the difference between stripper and non-stripper amounts.

Doc. 1699, App. C, Deposition of Stan Bates, Exh. 1–4. A letter from Mobil to Koch involving the R.E. Farris property provided:

Mobil has now certified this particular lease as stripper by including injection wells in the producing well count. This certification was mailed registered mail to Koch on August 31, 1978.

We wish to inform you that we will continue to invoice you as we are currently; however, you will be issued an additional invoice on this lease for the difference between stripper and non-stripper value. This difference should be paid to Mobil so payment can be made to the Kansas District Court in compliance with Injunction Order issued September 6, 1978, a copy of which was also mailed to Koch.

*Id.* Exh. 5.

17. Mobil deposited amounts to the M.D.L. 378 escrow that Koch remitted to Mobil, i.e., the stripper price increment less taxes.

18. Koch purchased oil from Mobil-operated M.D.L. 378 properties both from Mobil and from producers other than Mobil.

19. The Division and Transfer Orders under which Koch purchased from Mobil provided either: "you [Koch] agree to pay for such oil (less any tax which you may be required to pay with respect thereto or the proceeds thereto ...) to the respective owners ..." *see* Doc. 1699, App. E, Affidavit of R.R. Bates, Exh. 1–15, 18–20, Para. Second; or "The proceeds of said oil after deducting any severance, occupation, or other tax imposed by law and required to be deducted by you [Koch] as a purchaser ... shall be paid monthly ..." *see id.* Exh. 16, 22–23, Para. Fourth.

20. Koch as first purchaser paid taxes to Oklahoma on the incremental stripper value of its purchases from Mobil-operated properties.

21. Koch paid under protest the severance taxes attributable to the incremental

difference between the stripper well price and the controlled price.

22. The sum of $2,610,650, calculated as of September 30, 1989, is attributable to Oklahoma severance taxes retained by Koch which have not been remitted to Mobil for deposit into escrow for which DOE has received a judgment of principal and interest at DOE policy rates. *See* Doc. 1699, App. E, Second Aff. of R.R. Bates, Exh. 21; *see also* Doc. 1562, Aff. of R.R. Bates, Exh. 35.

23. The sum of $470,295, calculated as of September 30, 1989, is attributable to interest accrued on Koch's delayed payments to Mobil of sums for deposit into escrow. *See* Doc. 1699, App. E, Second Aff. of R.R. Bates, Exh. 21.

24. Exhibit 35 to the Affidavit of R.R. Bates (Doc. 1562, filed February 13, 1989) summarizes the severance taxes which were due to the State of Oklahoma on the incremental value of stripper well oil that Koch purchased from Mobil-operated properties in Oklahoma.[1]

25. On February 23, 1983, the court issued an order that provided: "plaintiffs shall not make any refunds without court order, pending resolution of the appropriate disposition of the refunds." Doc. 285.

26. By letter dated September 29, 1983, Koch requested that the Oklahoma Tax Commission refund the taxes paid on the difference between stripper and controlled prices.

27. On November 22, 1983, the Oklahoma Tax Commission refunded to Koch a total of $2,005,028.14. This sum consisted of $1,988,727.38 in severance taxes plus interest ($1,342,393.06 principal; $646,334.32 interest) and $16,300.76 in petroleum excise taxes. A total of $1,309,595.10 in refunded severance taxes plus interest is attributed by Koch to Mobil-operated properties ($894,714.98 principal; $414,880.20 interest).

28. Koch did not remit this tax refund to the escrow.

29. Documentary evidence before the court indicates that Koch's Stan Bates recommended that Koch Oil Company take the $1,988,727.38 to income in February 1984 business. Doc. 1699, Exh. C, Exh. 11. Koch apparently did take the refund into its own income. (Koch attempts to dispute Mobil's statement of fact that Koch "took the refund into its own income," but Koch has failed to provide the court with any documentation sufficient to controvert this statement of fact.)

30. A Final Settlement Agreement was approved by the court on July 7, 1986, resolving the issue of the distribution of the escrowed overcharge funds.

31. Koch Refining Company was a beneficiary of and a signatory to the FSA. Under the FSA, Koch Refining Company was to receive a total of $433,127 plus any interest thereon and its proportionate share of unexpended cost reserves. Koch Refining Company, a wholly owned subsidiary of third party defendant Koch Industries, Inc., executed the FSA but was not a party to M.D.L. 378.

32. On November 21, 1988, Mobil filed a third party claim against Koch seeking restitution and contribution of any principal or interest payment required to be made by Mobil to the M.D.L. 378 escrow on Koch's account.

33. On August 25, 1989, the court granted summary judgment in favor of the DOE against Mobil in the amount of $10,214,510, plus interest accruing after March 31, 1989, through the date of payment.

Mobil's motion for summary judgment identifies four potential grounds for Koch's liability: (1) the court's injunctions; (2) federal common law and state law of contribution and indemnity; (3) the court's equitable powers to order restitution; and (4) the Final Settlement Agreement. The

---

1. Koch indicated in its response brief (Doc. 1715, p. 4, ¶ 8) that it had not verified the accuracy of Exhibit 35. Koch indicated that it would file an affidavit if Exhibit 35 did not accurately reflect severance taxes that were due. The court has examined the record in this matter. Koch's filings do not include an affidavit. The docket sheet does not reflect that any such affidavit was filed by Koch. Consequently, the court concludes that Koch has found no inaccuracies in Mobil's calculations contained in Exhibit 35.

court will address each of these arguments, although in a different order.

■ Koch argues that it was not properly "served" with a copy of the court's September 6, 1978 injunction. *See* Fed.R. Civ.P. 4(d)(3) (service to be made on an officer, a managing or general agent, or to any other agent authorized to receive service of process). Rule 4(d) deals with service of the summons and complaint. Koch does not dispute that it had actual notice of the injunction. Rule 65 provides in pertinent part:

> Every order granting an injunction ... is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, *and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.*

Fed.R.Civ.P. 65(d) (emphasis added). Koch argues that the injunction did not require it to take or refrain from taking any action. Koch could not have kept the stripper price increment for itself instead of forwarding it to the escrow. The court's injunction, of which Koch was aware, prevented Koch from taking such action.

The September 6, 1978 injunction ordered Mobil to "pay, or cause to be paid" the stripper price increment into the court's escrow. Mobil argues that it was thus expressly "empowered" to collect the entire stripper price differential, including amounts attributable to severance taxes, for payment into the escrow. Assuming that Mobil was so empowered, the uncontroverted facts indicate that Mobil chose not to exercise that power. Mobil and the other interest owners at the Mobil-operated properties chose to have Koch, as first purchaser, continue to pay severance taxes to the State of Oklahoma rather than pay those sums into the court's escrow.

Mobil argues that an order entered by the court on February 23, 1983 expressly modified all injunctions and imposes liability on Koch. The February 23, 1983 order provides in relevant part:

> Defendant's motion to preserve the status quo was granted and plaintiffs shall not make any refunds without court

order, pending resolution of the appropriate disposition of the refunds.

Doc. 285. Mobil argues, without citation to any matter in the record, that Koch knew or should have known that the court had modified the previous injunctions. This order, by its plain language, precluded all plaintiffs (such as Mobil) from making refunds to their first purchasers (such as Koch). Although the court believes that Koch violated the spirit of the order by retaining the tax refund, Koch did not violate the letter of the order. Koch was not a plaintiff in M.D.L. 378.

■ Mobil also argues that Koch is liable under the Final Settlement Agreement. Koch argues that it is not bound by the FSA because its wholly owned subsidiary executed the FSA. The court disagrees. The FSA provides in relevant part:

> The provisions of this Agreement ... shall be binding upon (1) all the Parties hereto and (2) all Persons executing waivers or releases pursuant to this Agreement, and with respect to such Parties and Persons, their Affiliates, ... and their owners, ... As used herein, an "Affiliate" of any Party includes any Person ... which controls ... such Party. For this purpose, "control" means the power ... by ... stock ownership or otherwise, to control the policies and business operations of a Person, including, without limitation, ... the ownership ..., directly or indirectly ..., of more than 49 percent of a Person.

FSA ¶ VI.A. Koch Refining Company is a wholly owned subsidiary of Koch. Koch is thus an "affiliate" of Koch Refining Company for purposes of the FSA.

Koch Refining Company received a distribution from the Refiners Escrow. *See* FSA Exh. A, Attachment D (list of eligible buyer recipients). To do so, Koch Refining Company was required to execute certain waivers and releases. FSA Exh. A, Attachment A. In so doing, Koch Refining Company bound its parent to the terms of the FSA. This court has previously held that corporations whose subsidiaries or other affiliates have executed the waivers and releases required by the FSA are them-

selves bound by the FSA. *See Mid–America Dairymen, Inc. v. Herrington,* 704 F.Supp. 198 (D.Kan.1988) (holding Mid–America Dairymen, Inc. bound by its affiliate's execution of FSA waiver and release), *aff'd,* 878 F.2d 1448 (Temp.Emer.Ct. App.1989); Opinion and Order, Doc. 1351 (Dec. 7, 1987) (holding Boise Cascade Corporation et al. bound by their affiliates' execution of FSA waivers and releases).

The court agrees with Koch, however, that the FSA imposes no monetary liability on it. The FSA provides that:

> all Parties are bound by the terms of this Agreement and agree to be bound by an order of the District Court approving and enforcing the Agreement.

FSA ¶ II.A.1. The FSA further provides that "any Party may enforce this Agreement against any other Party ..." FSA ¶ VI.B. Mobil does not identify any substantive rights to be enforced against Koch, since no such substantive rights are contained in the FSA. The FSA does not impose monetary liability on any party to M.D.L. 378:

> Nothing in this Agreement may be read to enlarge, abridge, limit or otherwise affect the ability of the parties to M.D.L. 378 to litigate the issues remaining in M.D.L. 378 concerning the determination and collection of the amount of remaining liability, if any, of any party to M.D.L. 378 for counting injection wells to qualify a property as a stripper well property, ...

FSA ¶ II.A.6. Nothing in the FSA can be read to impose liability to the escrow on Koch. *See also* 739 F.Supp. 1449, 1455 (D.Kan.1990) (granting Oklahoma's motion to dismiss; FSA does not resolve the issue of what funds are owing to the escrow or from whom; no provision in the FSA to enforce against Oklahoma).

■ Mobil's final argument is that Koch is liable under federal common law of contribution, indemnity, or restitution. *See Exxon Corporation v. Jarvis Christian College,* No. TY–80–432–CA, —— F.Supp. —— (E.D.Tex. Aug. 25, 1989) (recognizing a federal common law action for reimbursement from royalty and working interest owners after the imposition of sole liability on Exxon, as operator, for overcharges in *United States v. Exxon Corp.,* 561 F.Supp. 816 (D.D.C.1983), *aff'd* 773 F.2d 1240 (Temp.Emer.Ct.App.1985), *cert. denied,* 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986)).

The United States Supreme Court has long held that there is "no federal general common law." *Erie Railroad v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). However, in certain limited areas, the federal courts have authority to formulate federal common law. *See Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981). These instances fall into two general categories: "those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' and those in which Congress has given the courts the power to develop substantive law ..." *Id.* (citations omitted). Absent congressional authorization for the courts to formulate substantive rules of decision,

> federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases. In these instances, our federal system does not permit the controversy to be resolved under state law, either because the authority and duties of the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control.

*Id.* at 641, 101 S.Ct. at 2068 (footnotes omitted). This case implicates a uniquely federal interest, federal petroleum price controls, which requires the application of federal common law.

To determine whether a federal common law cause of action should be recognized, the court must begin with a brief discussion of the operator liability doctrine. Under the operator liability doctrine, the DOE may hold the operator of a crude oil producing property liable for the entire amount of overcharges which occurred, even though the operator may have re-

ceived only a portion of the overcharges corresponding to its percentage ownership interest in the property. Operator liability has been imposed in at least two general situations: when the operator is the animating force responsible for the overcharges, or when the operator is held liable as a matter of administrative convenience. *See Sauder v. Department of Energy,* 648 F.2d 1341, 1347–48 (Temp.Emer.Ct.App. 1981) (sole operator certified the leases as stripper well leases and caused the overcharges); *United States v. Exxon Corp.,* 561 F.Supp. 816, 850 (D.D.C.1983), *aff'd* 773 F.2d 1240, 1270 (Temp.Emer.Ct.App.1985), *cert. denied,* 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986) (requiring DOE to proceed against over 200 working interest owners and over 2200 royalty interest owners would plunge DOE into an "administrative quagmire").

The courts have stated, however, that the operator "is not without recourse against the other interest owners, ..." *Exxon,* 561 F.Supp. at 850. The burden of pursuing each individual owner is placed upon the operator. *Sauder,* 648 F.2d at 1348. During the overcharge proceedings, the court does not determine the nature or extent of the operator's right to contribution or indemnity, if any. Nor does the court adjudicate the rights or liabilities of absent interest owners. *Exxon,* 773 F.2d at 1271. Imposition of sole liability on the operator does not depend on a finding that the operator is entitled to contribution for the overcharges from the other working interest and royalty interest owners in the property. *Id.* at 1272.

*Exxon Corporation v. Jarvis Christian College,* No. TY–80–432–CA, —— F.Supp. —— (E.D.Tex. Aug. 25, 1989) is the only case of which this court is aware involving the alleged liability of interest owners to the operator who paid the entire amount of the overcharges. In finding a federal common law cause of action, Judge Robert M. Parker found that reimbursement implicated a uniquely federal interest. Exxon had

been held liable for violating the two-tier pricing regulations under the Economic Stabilization Act and the Emergency Petroleum Allocation Act. That two-tier pricing structure was designed to combat inflation and encourage domestic production of crude oil. *Id.* at ——. If other interest owners had received and retained the overcharges, the interest owners would undermine these two goals. *Id.* at ——. Had the other interest owners been a party to the overcharge proceedings in *United States v. Exxon,* the district court could have required restitution from them. The DOE, however, chose not to pursue the other interest owners because of the administrative burden. *Id.* For these reasons as well as a sense of justice and fairness, the court held that Exxon had an implied cause of action under federal common law for reimbursement. *Id.* at —— – ——.[2]

Following imposition of sole liability on the operator, the operator has the burden of pursuing each individual working interest and royalty interest owner to recover the overcharges which that interest owner received. The cause of action recognized in *Jarvis* involves the potential liability of the interest owners. In the present action, Mobil is seeking to extend liability to an entity that is not an interest owner. As a general rule, the court does not believe liability should be extended to the first purchaser. Holding an interest owner liable for its share of the overcharges is fair because the owner received its share of the overcharges. As between the operator of the property and the first purchaser, neither of whom received or retained all the overcharges, it is fairer to impose liability on the operator who has a potential cause of action against the working interest and royalty interest owners.

Koch argues that *Exxon* does not stand for the proposition that a cause of action should be implied in favor of the party who violated the crude oil pricing regulations against the first purchaser who paid the

---

**2.** Whether the working interest and royalty interest owners are liable to Exxon for the Hawkins Field Unit overcharges paid by Exxon pursuant to *United States v. Exxon Corp.* remains to be determined. *Exxon Corp. v. Jarvis Christian*

*College,* No. TY–80–432–CA (E.D.Tex.) is currently pending in the United States District Court for the Eastern District of Texas. This court is unaware of any final disposition in this matter.

overcharges. Koch additionally argues that as the purchaser of the crude oil, it was entitled to retain the overcharges when those amounts came back into its hands. Koch argues that Mobil was not entitled to the tax refund amounts. Koch was not entitled to those funds, either. Koch applied for, received, and retained a severance tax refund to which it was not entitled. The funds Koch received from the State of Oklahoma constituted a portion of the stripper price increment. Those funds should have been paid into the court's escrow. Koch was unjustly enriched in the amount of the refunded severance taxes.

Mobil has been ordered to pay into the court's escrow funds attributable to those same severance taxes plus accrued interest at DOE policy rates. As between Mobil and Koch, Koch should be held responsible for these escrow deficiencies. To the extent Mobil has been ordered to pay sums into the escrow on account of Koch's actions, Mobil is entitled to recovery from Koch. Koch is liable to Mobil for the severance tax amounts plus interest at DOE policy rates.

Mobil additionally makes a claim based on Koch's alleged delay in payment of funds to Mobil for deposit into the M.D.L. 378 escrow. This alleged late payment caused interest to accrue in the amount of $470,295. Koch was unjustly enriched by the retention of sums which were owing to the escrow. Koch kept the funds and had use of the funds during that time. Koch was not entitled to retain those funds which should have been paid to Mobil for deposit into the court's escrow.

Koch argues that even if Mobil's claim for restitution is correct on the merits, it is now barred by the statute of limitations. Whether the court calls this federal common law cause of action one for restitution, reimbursement, contribution, or indemnity, the cause of action did not accrue until final judgment had been entered against Mobil in favor of the DOE for the amounts at issue here. That final judgment has only recently been entered. Regardless of the length of the applicable statute of limitations, Mobil's claims against Koch are timely.

Given the court's determination that Koch is liable to Mobil for part of the DOE's counterclaim against Mobil, the court does not need to address Koch's argument that it was improperly joined as a third party defendant. Fed.R.Civ.P. 14(a).

IT IS BY THE COURT THEREFORE ORDERED that Koch's motion to dismiss (Doc. 1535) is hereby denied.

IT IS FURTHER ORDERED that Mobil's motion for summary judgment (Doc. 1698) is hereby granted.

IT IS FURTHER ORDERED that Koch's motion for summary judgment (Doc. 1697) is hereby denied.