GAS-A-CAR, INC., a Colorado corporation, et al., Plaintiffs-Appellants,

v.

AMERICAN PETROFINA, INC., and American Petrofina Company of Texas, Defendants-Appellees.

No. 72–1772.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 9, 1973.

Decided Sept. 19, 1973.

Daniel L. Berman, Salt Lake City, Utah (Francis P. King, Denver, Colo., on the brief), for plaintiffs-appellants.

Gordon G. Greiner, Denver, Colo. (Donald O. Kinonen and Graham M. Clark, Jr., Denver, Colo., on the brief), for defendants-appellees.

Before PHILLIPS, HILL and McWILLIAMS, Circuit Judges.

HILL, Circuit Judge.

This appeal seeks review of a decision by the federal district court for Colorado dismissing the second of two counts set out in appellants' complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6) F.R. Civ.P. Count I of the complaint charges appellees-petroleum companies with attempting to monopolize the sale of gasoline in the Denver, Colorado, area in violation of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. Count II, which was dismissed by the lower court, alleges that certain appellees have committed primary line price discrimination against appellants in violation of § 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a). Identical damages are requested under both counts, and both counts are premised upon related facts, namely, the distribution and pricing of gasoline in Denver and adjacent markets.

The appellees, American Petrofina, Inc., and American Petrofina Company of Texas, engage on an integrated basis in the production, manufacturing, transportation and marketing of refined petroleum products, including gasoline. In the Denver metropolitan market the appellees engage in the wholesale marketing of gasoline to their branded jobbers and dealers. The appellants, Gas-A-Car, Inc., R. L. Timms and D. N. Timms, operate self-serve unbranded gasoline stations in the Denver area. Appellants do not wholesale gasoline to other dealers. Nor are appellants customers of appellees or of appellees' jobbers or dealers.

Count I charges the appellees with intending to suppress and eliminate the competition of appellants by combining and conspiring with others: (1) to fix and control the retail prices of gasoline in the Denver metropolitan market; (2) to fix and control the prices at which dealers and rack jobbers purchase and resell gasoline in the Denver metropolitan market; (3) to fix and control the price appellants pay for gasoline; (4) to refuse to sell appellants gasoline for resale on a price supported basis; (5) to sell gasoline below cost in the Denver market; and (6) to engage in prolonged price wars with the intent of controlling

the price at which appellants sell gas in the Denver market. Count II charges the suppliers-appellees with discriminating in price on the sale of gasoline between its jobbers and dealers in the Denver metropolitan market and its jobbers and dealers in other markets in states adjoining Colorado and in the State of Texas in violation of § 2(a) of the Robinson-Patman Act. The effect of this price discrimination is (1) to eliminate the competition of unbranded self-serve marketers such as appellants; (2) to control the gasoline prices of unbranded self-serve marketers; (3) to eliminate the established differential between the price of gasoline marketed at branded service stations and the price at unbranded self-serve service stations; (4) to sell gasoline at below supplier's cost; (5) to erode and destroy the competitive price structure, thereby causing sharply declining prices in the sale and distribution of gasoline; (6) to prolong and intensify destructive price wars in the sale and distribution of gasoline.

Upon motion by appellees, the district court dismissed Count II of the complaint for failure to state a claim upon which relief could be granted. Dismissal was based on the district court's holding that since the complaint did not allege that appellants were in competition with appellees on the same distribution level, it did not state a primary line violation of § 2(a).

After granting appellees' motion to dismiss, the district court, pursuant to Rule 54(b), determined there was no just reason for delaying entry of final judgment on the order, and accordingly entered final judgment dismissing Count II. On appeal two issues are presented for consideration. First, whether the district court's dismissal is properly appealable under Rule 54(b). Second, whether there is a primary line violation of § 2(a) directed against appellants.

Appellees first contend our court lacks jurisdiction to hear this appeal because the district court improperly invoked Rule 54(b). Admittedly, determining whether Rule 54(b) was properly invoked is no easy matter. If there had been no certification as required by Rule 54(b), the issue would be settled for we would clearly lack jurisdiction. Skelly Oil Co. v. Zimmerman, 332 F.2d 618 (10th Cir. 1964). But the district court properly certified the order and thus our inquiry must be directed toward whether the lower court properly issued the Rule 54(b) certificate. Baca Land & Cattle Co. v. New Mexico Timber, Inc., 384 F.2d 701 (10th Cir. 1967).

Rule 54(b) provides, in relevant part:

When more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

The paramount question relating to jurisdiction is whether the appellants' complaint involves two separate claims or a single claim supported by two legal theories. If there is but one claim, the district court erred in certifying the dismissal order pursuant to Rule 54(b). Appellees contend both counts of the complaint stem from the same aggregate of operative facts and therefore multiple claims are not present. It is their position that as both causes of action are based on the alleged discriminatory pricing structure there is actually but one claim for relief. We do not believe, however, the rule for determining multiple claims mandates the rigidity appellees suggest. Two Supreme Court cases lead us to this conclusion. In Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956), the complaint contained four counts. The first count sought damages under the antitrust laws for injury to three of Mackey's commercial ventures. The remaining counts sought damages under a common law approach for injuries sustained by these ventures. The district court dismissed the first two counts and certified them under Rule 54(b). The Supreme Court held Rule 54(b) was

properly invoked because Count Two was independent of Counts Three and Four since it involved a separate business. Count One was found to involve some of the same facts as Counts Three and Four, but the Court nevertheless held that "there is no doubt that each of the claims dismissed is a 'claim for relief' within the meaning of Rule 54(b), or that their dismissal constitutes a 'final decision' on individual claims." 351 ·U.S. at 436, 76 S.Ct. at 900. Another case decided the same day as *Sears* held that a certified judgment on plaintiff's claim was appealable even though a counterclaim, arising in part out of the same transaction as plaintiff's claim, remained unadjudicated. Cold Metal Process Co. v. United Eng'r & Foundry Co., 351 U.S. 445, 76 S.Ct. 904, 100 L. Ed. 1311 (1956). Based upon the above two cases we are convinced that Count I in the case at bar is not·so inherently inseparable from or closely related to the claims in Count II that the district court has abused its discretion in certifying this case pursuant to Rule 54(b). Admittedly many of the same facts will be used to prove both counts, but the facts necessary to prove Sherman §§ 1 and 2 violations need not be totally identical to those proving a Robinson-Patman § 2(a) primary line discrimination. We hold appellants' complaint sufficiently states two separate claims for relief as required by Rule 54(b).

■ Appellees nevertheless argue that even if the complaint states separate claims for relief, our court still lacks jurisdiction because dismissal of Count II is not a final order as required by 28 U.S.C. § 1291. They reason that under Count I appellants will still be allowed to show there is a discriminatory pricing structure utilized by appellees. It follows, so the argument goes, that dismissal of Count II does not prevent them from seeking whatever relief they can show is justified.

Our court has held that a decision or decree is final for purposes of appeal when the litigation between the parties on the merits of the case is terminated and nothing is left to be done except enforce by execution what has been determined. First Nat'l Bank v. Johnson County Nat'l B. & T. Co., 331 F.2d 325 (10th Cir. 1964); Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478 (1942). We have held above that Count II is a separate claim for relief and thus its dismissal effectively terminates it as a claim. Further prosecution of this case under Count I would not resolve the issues contained in the dismissed Count II, and thus there is nothing left to be done except appeal.

■ As a final attack on our court's jurisdiction, appellees suggest we avoid hearing this case since at best it will be a piecemeal review. Admittedly trial courts should be reluctant to enter Rule 54(b) orders since the purpose of this rule is a limited one: to provide a recourse for litigants when dismissal of less than all their claims will create undue hardships. "The power which this Rule confers upon the trial judge should be used only 'in the infrequent harsh case' as an instrument for the improved administration of justice and the more satisfactory disposition of litigation in the light of the public policy indicated by statute and rule." Panichella v. Pennsylvania R. Co., 252 F.2d 452, 455 (3d Cir. 1958). In the instant case the trial court noted it would· be better to determine this issue through a Rule 54(b) order because if there is reversible error it will save a future trial on Count II. We agree with the district court's reasoning; under the facts of this case refusal to hear the Rule 54(b) order might create undue hardships on appellants which outweigh any inconvenience resulting from the delay of the trial. Failure to hear the appeal at this time would necessitate a piecemeal approach at the trial level. Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). We therefore hold that under the mandates of Rule 54(b) our court has jurisdiction to hear this appeal.

■ The second issue presented for our consideration focuses on the stand-

ing of appellants under § 4 of the Clayton Act, 15 U.S.C. § 15, to seek relief under § 2(a) of the Robinson-Patman Act. Section 4 of the Clayton Act states in material part that "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue . . . , and shall recover three-fold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." Section 2(a) of the Robinson-Patman Act provides as follows:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality . . . and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them. . . .

At the outset we note that § 4 of the Clayton Act has been given an interpretation by the courts which is more restrictive than would be the case if the Act were read literally. Although § 4 states in part that "any person who shall be injured . . . may sue," it is clear that not all parties injured by reason of violation of the antitrust laws are able to maintain damage suits. Several examples are shareholders, officers of corporations, creditors and landlords. Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358 (9th Cir. 1955); see Bolick-Gillman Co. v. Continental Baking Co., 206 F.Supp. 151 (Nev.1961).

Determining whether appellants have standing ultimately depends upon whether they are within the class protected by § 2(a) of the Robinson-Patman Act. Unquestionably the passage of § 2(a) was motivated principally by congressional concern over the impact upon secondary line competition of gigantic purchasers such as chain stores. But it is also clear that § 2(a) is directed toward price discriminations affecting primary line competition. Section 2(a), which amended in 1936 the Clayton Act of 1914, maintained the congressional desire to curb local price cutting tactics by powerful corporations when it impaired the competitive position of other sellers. FTC v. Anheuser-Busch, Inc., 363 U.S. 536, 80 S.Ct. 1267, 4 L.Ed.2d 1385 (1960).

Appellants admit that a secondary line discrimination is not involved here; but they do assert that appellees have perpetrated a primary line discrimination. Appellees counter this contention by arguing that no primary line discrimination has occurred because appellants are not competitors of appellees. Since appellants sell only at retail level while appellees sell only at wholesale level, there is not the competitive relationship necessary for a § 2(a) private primary line violation.

Admittedly there is authority supporting appellees' position, in particular in *Bolick-Gillman Co.*, supra. In that case plaintiff was a wholesale distributor of bread in Las Vegas, Nevada. Defendant was a Utah manufacturer of bread who used a distributor other than plaintiff to distribute bread in the Las Vegas area. Defendant-manufacturer charged prices to its Las Vegas distributor which were lower than those charged to its distributors elsewhere. Plaintiff sued, alleging that it was seriously injured by the price discrimination. The district court, in holding for defendant, determined that plaintiff-wholesaler lacked standing to sue since it neither purchased bread from defendant nor marketed its product on the same distributive level as defendant.

*Bolick-Gillman Co.* holds that before § 2(a) can be invoked injury must occur at the same distributive level. We do not believe, however, that *Bolick* is dispositive of the case at issue. A case more in line with the one at bar is Sanitary Milk Producers v. Bergjans Farm Dairy, Inc., 368 F.2d 679 (8th Cir. 1966). In *Sanitary* the plaintiffs were

wholesalers and retailers of processed milk while the defendant was a wholesaler of processed milk. The plaintiffs charged that defendant's discriminatory pricing via rebates to certain customers injured the plaintiffs as competitors of defendant at the wholesale level and also by injuring competition at retail level. The jury found a § 2(a) Robinson-Patman violation based upon discrimination between defendant's wholesale customers which injured plaintiffs, who competed both with defendant as processor-wholesaler and with the defendant's customers as retailers. On appeal defendant argued that under § 2(a), injury to competition at retail level requires the existence of purchases from a common discriminating supplier. As plaintiffs purchased no processed milk from defendant there could be no § 2(a) violation. The court of appeals rejected this argument and held that defendant's price discrimination to its customers indicated it was participating in the dictation of the retail price of its processed milk. By doing so it was providing competition with plaintiffs at the retail level, and therefore the situation was, in fundamental character, primary line competition at retail between plaintiffs and defendant.

Appellants in the present case allege in their complaint that appellees have adopted a discriminatory pricing structure in the Denver area to, inter alia, eliminate the competition of unbranded self-serve marketers such as appellants; to control the gasoline prices of unbranded self-serve marketers; to sell gasoline at below supplier's cost; and to destroy the competitive price structure. It is clear from the pleadings that appellees possess immense economic power. Unquestionably the appellees have at their disposal the economic wealth necessary to affect the retail market.

■ The lower court, after reading the briefs and listening to oral arguments on appellees' motions to dismiss, held that appellants' § 2(a) allegation failed to state a claim upon which relief could be granted. We do not agree with this conclusion. The law is clear that a complaint should not be so dismissed unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. Miami Parts & Spring, Inc. v. Champion Spark Plug Co., 364 F.2d 957 (5th Cir. 1966); see Build of Buffalo, Inc. v. Sedita, 441 F.2d 284 (2d Cir. 1971); Ballou v. General Elec. Co., 393 F.2d 398 (1st Cir. 1968).

Although the lower court's decision is based upon the merits of the § 2(a) claim, we are convinced it was error to make this decision solely on the allegations. The appellants should have been given the opportunity to prove their allegations as stated in Count II; for at the present stage of the proceedings it cannot be said with certainty that appellants are not entitled to relief under any set of facts which could be proved in support of those allegations. The complaint alleges geographic price discrimination by several major branded oil companies. It is implicit within the allegations that appellees-wholesalers are indirectly setting the price of gas at retail level. If from appellees' conduct it can be rationally inferred that they are in effect operating at retail level, then we have primary line competition between appellants and appellees.

■ In conclusion, we hold it error to summarily dismiss Count II at the pleading stage of this complicated antitrust action. Pleadings are to be liberally construed and if there is any possibility of recovery the case should not be dismissed. In the present case Count II was dismissed prior to pre-trial conference and before all means of discovery could be exhausted. We do not believe this is the proper procedure in complicated antitrust actions. If after pre-trial conference and a reasonable time for discovery appellants fail to show some evidence of a competitive relationship between themselves and appellees dismissal will be warranted, but certainly not before.

The order of dismissal appealed from is vacated and the case is remanded with directions to proceed in accordance with this opinion.