**MINNESOTA MINING AND MANUFACTURING CO.,**
Plaintiff,

v.

**RESEARCH MEDICAL, INC.; Peter Von Berg; and Peter Von Berg, a corporation, GmbH, Defendants.**

No. 84–C–0728S.

United States District Court,
D. Utah, C.D.

July 13, 1988.

**1306**

Laurence H. Pretty, Gary A. Clark, Los
Angeles, Cal., David A. Greenwood, Van
Cott, Bagley, Cornwall & McCarthy, Salt
Lake City, Utah, Walter N. Kirn, Robert
W. Hoke, Craig S. Summers, St. Paul,
Minn., for Minnesota Mining & Mfg. Co.

H. Ross Workman, David O. Seeley,
Workman, Nydegger & Jensen, Louis M.
Haynie, Salt Lake City, Utah, for Research
Medical, Inc.

SAM, District Judge.

The action is before the court on the
motion by plaintiff Minnesota Mining and
Manufacturing Co. (3M) for modification of
the court's ruling on 3M's Motion for Certi-
fication of Final Judgment under Fed.R.
Civ.P. 54(b).

3M brought this action for patent in-
fringement under 35 U.S.C. §§ 271, 281
and 283–85; defendant Research Medical
Company, Inc. (RMI) raised counterclaims
of invalidity, unenforceability, noninfringe-
ment and antitrust. Pursuant to this
court's order, RMI's antitrust counter-
claims were severed for trial at a later
date. In its October 22, 1987 memorandum
decision, 679 F.Supp. 1037, the court con-
cluded the subject 3M '129 patent is invalid
and unenforceable on all claims. The court
further concluded the RMI Von Berg cathe-
ter infringes the '129 patent claims 5, 6 and
7; and the RMI Polaris catheter infringes
the '129 patent claims 5 and 6. On Febru-
ary 18, 1988, the court entered final judg-
ment on all decided claims except RMI's
counterclaim assertions regarding ineq-
uitable conduct and attorney's fees. The
ruling was based on the court's determina-
tion the inequitable conduct issues decided
in the infringement claim are so interrelat-
ed with the inequitable conduct issues in
the remaining antitrust claims that " 'the
interests of sound judicial administration'
would best be served by permitting 3M's
conduct to be viewed as a whole." Memo-
randum Ruling at 5 (quoting *Curtiss–
Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1,
7–8, 100 S.Ct. 1460, 1464–65, 64 L.Ed.2d 1
(1980)). The court found persuasive RMI's
argument that if the validity and infringe-
ment claims were certified for appeal in
their entirety, the inequitable conduct is-
sues would be considered outside the con-

text in which they would be presented for antitrust purposes, and an adverse appellate decision on inequitable conduct could prejudice RMI or unduly increase its burden on the antitrust counterclaims.

3M now moves the court to vacate its ruling, and enter final judgment on all claims finally decided.

### I. *Definition of "claim" under Rule 54(b)*

■ Rule 54(b) provides in part:

When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

The quoted portion of the Rule applies only to an action in which multiple claims are presented, and one or more but fewer than all the claims have been finally decided. *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956). In the present case, there is no issue concerning whether the validity and infringement claims were finally decided; therefore the court turns to the question whether there should be any just reason for delay of entry of final judgment. In *Curtiss–Wright,* the Supreme Court clarified the scope and purpose of Rule 54(b):

Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court is to act as a 'dispatcher.' [*Sears, Roebuck,* 351 U.S.] at 435, 76 S.Ct. at 899. It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. *Ibid.* This discretion is to be exercised 'in the interest of sound judicial administration.' *Id.,* [351 U.S.] at 437, 76 S.Ct., at 900.

Thus, deciding whether there are no just reasons to delay the appeal of individual final judgments ..., a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'

*Curtiss–Wright,* 446 U.S. at 8, 100 S.Ct. at 1465. The Court considered two specific factors proper "judicial administrative interests": "whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* (footnote omitted). However, even when the appellate court would be required to review the same issues in subsequent appeals, certification might be appropriate if the district judge should determine "an appellate resolution of the certified claims would facilitate a settlement of the remainder of the claims." *Id.,* 446 U.S. at 8 n. 2, 100 S.Ct. at 1465 n. 2.; *see Cold Metal Process Co. v. United Eng'g & Foundry Co.,* 351 U.S. 445, 450 n. 5, 76 S.Ct. 904, 907 n. 5, 100 L.Ed. 1311 (1956).

In its present motion, 3M requests the court to include the inequitable conduct questions in the certification order on the ground that although Rule 54(b) allows the court to direct entry of final judgment on one claim for relief where multiple claims are presented, the inequitable conduct question is not a separate claim, but merely an issue that arose in the unenforceability defense related to RMI's "declaratory judgment *claim for relief."* 3M's Memorandum in Support of Motion for Modification at 4 (emphasis in original). 3M further argues that 28 U.S.C. § 1292(b) is not relevant in this case. Under § 1292(b), the court may certify an order for interlocutory appeal of an issue if it should involve a controlling question of law on which there is substantial ground for difference of opinion; however, here § 1292(b) certification was not asserted by either party, and in any event, the statute is not authority for excising issues from certification of claims

finally decided. The court agrees with 3M that § 1292 is not relevant in this case, and does not believe its certification order reflects confusion on that point.

The paramount question is whether the inequitable conduct allegations give rise to a claim separate from the validity and infringement claims or whether it is merely a theory or issue attached to RMI's defense of invalidity or unenforceability. *See Gas–A–Car, Inc. v. Amer. Petrofina, Inc.,* 484 F.2d 1102, 1104 (10th Cir.1973). The courts "recognize that Rule 54(b) precedent is untidy, and 'courts have been completely unable to settle on a single test for determining when claims "are separate." ' " *Tolson v. United States,* 732 F.2d 998, 1001 (D.C. Cir.1984) (footnote omitted) (quoting *Local P–171, Amalgamated Meat Cutters v. Thompson Farms Co.,* 642 F.2d 1065, 1070 (7th Cir.1981) (footnote omitted)); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2657, at 60–61 (2d Ed.1983) ("The line between deciding one of several claims and deciding only part of a single claim is sometimes very obscure."). *Tolson* states a " 'rule of thumb' for identifying a genre of 'claims that clearly cannot be "separate." ' " *Tolson,* 732 F.2d at 1001 (citation omitted) (quoting *Local P–171,* 642 F.2d at 1070). "When alleged claims [are] so closely related that they would fall afoul of the rule against splitting claims if brought separately, they do not qualify as 'separate claims' within the meaning of Rule 54(b)." *Id.* (citations omitted). That "rule of thumb" is set out in the District of Columbia Circuit's leading decision on the Rule 54(b) definition of a claim, *Gold Seal Co. v. Weeks,* 209 F.2d 802, 809–10 (D.C.Cir.1954), and is "indicated in sensible precedent elsewhere." *Tolson,* 732 F.2d at 1001; *see, e.g., Local P–171,* 642 F.2d at 1070; *Page v. Preisser,* 585 F.2d 336, 339 (8th Cir.1978).

*Tolson* expressly rejects the "different facts" test stated in the Tenth Circuit case, *Gas–A–Car,* 484 F.2d at 1105. In an antitrust action, *Gas–A–Car* held Rule 54(b) certification of the dismissal of Count II (violation of the Robison–Patman Act) was appropriate, because the unadjudicated claim, Count I (violation of the Sherman Act), was "not so inherently inseparable from or closely related to the claims in Count II that the district court ... abused its discretion in certifying [the] case...." *Id.* The Court further noted the facts to be proven on the two counts were not identical. *Id.; see also, Purdy Mobile Homes, Inc. v. Champion Home Builders Co.,* 594 F.2d 1313, 1316 (9th Cir.1979) (certification of dismissal of federal statutory claims proper because remaining contract claim requires proof of different facts). *Gas–A–Car* and *Purdy* agree a party "cannot successfully attack the court's finding of multiple claims merely by showing that some facts are common to all of its 'theories of recovery.' " *Purdy,* 594 F.2d at 1316; *see Gas–A–Car,* 484 F.2d at 1104–1105.

While the *Tolson* test comports more closely with *Curtiss–Wright* than does the *Gas–A–Car* test, it appears *Gas–A–Car* remains the law of this jurisdiction regarding the definition of a claim. However, the court determines that under both *Tolson* and *Gas–A–Car,* RMI's assertion of inequitable conduct cannot be considered a separate claim for Rule 54(b) purposes. Although proof of inequitable conduct primarily relates to the counterclaim of unenforceability and gives rise to attorney's fees, the court concludes that RMI's assertion of inequitable conduct is "so closely related" to its invalidity and noninfringement counterclaims that separate review of them "would fall afoul of the rule against splitting claims." *Tolson,* 732 F.2d at 1001 (quoting *Local P–171,* 642 F.2d at 1070). Further, the facts supporting the assertion of inequitable conduct are essential to the invalidity and noninfringement counterclaims. *See Gas–A–Car,* 484 F.2d at 1105. Consequently, the court is inclined to vacate its certification order of February 18, 1988, and reconsider the parties' original arguments on 3M's motion for certification.

II. *Standards of proof of inequitable conduct for invalidity and antitrust purposes*

■ Proof of inequitable conduct sufficient to support an invalidity or unen-

forceability counterclaim is also an element of an antitrust counterclaim; however, the standards of proof on the counterclaims are not the same. Regarding the standard of proof for an unenforceability defense or a claim for attorney's fees, "most lower court decisions require some kind of 'gross negligence' or reckless disregard of truth[;] [h]ence the standard of culpability is greater than simple negligence but less than intentional or willful fraud." D. Chisum, *Patents* § 19.03[4] (1987) (footnote omitted); *see, e.g., Maurice A. Garbell, Inc. v. Boeing Co.,* 546 F.2d 297, 300, 192 U.S.P.Q. 481, 483 (9th Cir.1976) (bad faith short of fraud sufficient for award of attorney's fees), *cert. denied,* 431 U.S. 955, 97 S.Ct. 2677, 53 L.Ed.2d 272, 195 U.S.P.Q. 752 (1977). The standard of proof for antitrust inequitable conduct is higher. In *Walker Process Equip. Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247, 147 U.S.P.Q. 404 (1965), the Supreme Court held

> [inequitable conduct] could form the basis for a suit to recover damages under antitrust laws. However, the claimant must prove more than mere invalidity through honest mistake and must establish the normal elements of monopolization under Section Two of the Sherman Act.

D. Chisum, *supra* § 19.03[6] (footnotes omitted).

> [I]n order to make out a violation of Section 2 of the Sherman Act [forbidding monopolization, attempts to monopolize and conspiracies to monopolize] on the basis of fraudulent procurement of a patent, a plaintiff must establish three separate and independent elements:
>
> (1) That the patent was procured by the commission of *intentional* fraud on the Patent Office in the common law sense;
>
> (2) That the fraudulently procured patent was used to exclude competition in a relevant market;
>
> (3) That the adverse competitive consequences required by Section 2 resulted.

V. Kalinowski, *Antitrust Laws and Trade Regulation* § 59.05[1] (1988) (footnotes omitted) (emphasis added). Thus, under *Walker Process* and supporting authority, proof of antitrust inequitable conduct requires a showing the patentee committed intentional fraud on the Patent Office. The following elements of fraud must be established by clear and convincing evidence:

> (1) A misrepresentation of a material fact intentionally made to the Patent Office in order to obtain the issuance of the patent;
>
> (2) Knowledge by the patentee of the falsity of the representation, or at least reckless disregard as to whether it is true;
>
> (3) Reliance by the Patent Office on the misrepresentation, that is, the patent would not have been issued *but for* the misrepresentation.

V. Kalinowski, *supra* § 56.05[2] (footnotes omitted) (emphasis in original). The Ninth Circuit stated the fraud must amount to an "affirmative dishonesty." *Cataphote Corp. v. DeSoto Chem. Coatings, Inc.,* 450 F.2d 769, 772, 171 U.S.P.Q. 736, 738 (9th Cir.), *cert. denied,* 408 U.S. 929, 92 S.Ct. 2497, 33 L.Ed.2d 341, 174 U.S.P.Q. 193 (1972). *Korody–Colyer Corp. v. Gen. Motors Corp.,* 828 F.2d 1572, 1578, 4 U.S.P.Q. 2d 1203, 1207 (Fed.Cir.1987), further elucidates the difference between the standards of proof:

> When a party relies on [inequitable conduct] as a sword (antitrust liability) rather than as a shield (invalidity or unenforceability), he must make a greater showing of scienter and materiality [of the misrepresentations or omissions in the patent application].

D. Chisum, *supra* § 19.03[6] (footnotes omitted). The reason antitrust claims carry the increased burden of showing intent is that "[a] patent obtained by intentional fraud is against the public interest and the exercise of the monopoly power under such a patent contravenes the policy of law." V. Kalinowski, *supra* § 59.05[1].

■ Although the court believes RMI presented sufficient evidence of inequitable

conduct to support its invalidity and unenforceability counterclaims, the court also believes RMI should have the opportunity to present this or additional evidence in the manner RMI deems necessary to meet the increased burden of proof on the antitrust claims. Applying the *Korody–Colyer* metaphor, the tip of RMI's sword is still in its scabbard. Therefore, the court considers well-founded RMI's fear that reversal of the inequitable conduct issue involved in the decided invalidity and unenforceability claims could prejudice RMI or unduly increase its burden on the antitrust claims.

Because the court finds this sufficient reason for delay of certification of the decided claims, it reiterates the statement in its memorandum ruling: " '[T]he interests of sound judicial administration' would best be served by permitting 3M's conduct to be viewed as a whole." Memorandum Ruling at 5 (quoting *Curtiss–Wright*, 446 U.S. at 7–8, 100 S.Ct. at 1464–1465, 64 L.Ed.2d 1 (1980)). The court is not moved from its decision by 3M's assertion that under a recent decision, *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 5 U.S.P.Q.2d 1112 (Fed.Cir.1987), "proving up a Sherman Action Section 2 claim is *irrelevant* and a huge waste of everyone's time if the patent was not obtained by inequitable conduct." 3M's Memorandum of Points and Authorities in Support of Motion for Modification at 6. *FMC* is distinguishable from the instant case in an important respect: the *FMC* antitrust claims were not severed from the unenforceability claim as they were here.* Thus, the FMC defendant put before the district court all evidence of inequitable conduct it could produce to prove its antitrust claims. Because that evidence was insufficient to establish fraud to support its unenforceability claim, the defendant could not have "borne the greater burden of establishing fraud to support its *Walker Process* claim." *Id.*, 835 F.2d at 1417, 5 U.S.P.Q.2d at 1117. After trial of the validity infringement issues, this court considered the evidence of inequitable conduct sufficient to show at least gross negligence on the part of 3M; it now believes,

given the added *Walker Process* burden, RMI should have an unhindered opportunity to present this and more evidence of inequitable conduct in the context of its antitrust claims. Hence, regarding the present "judicial administrative interests," the court concludes "the claims under review are not separable from the others remaining to be adjudicated," an "appellate court would have to decide the same issues more than once" if there were subsequent appeals and an appellate resolution of the inequitable issue involved in the validity and infringement claims would not facilitate a settlement of the antitrust claims. *Curtiss–Wright*, 446 U.S. at 8 n. 2, 100 S.Ct. at 1465 n. 2. Regarding the equitable interests, the court notes 3M states no substantial hardship it will suffer should its motion for certification of the decided claims be denied; however, RMI stands to suffer the mentioned hardship should the motion be granted. On balance, the court concludes full hearing of the inequitable conduct issues at the trial level will avoid both piecemeal appellate review and prejudice to RMI.

Finding just reason for delay of entry of final judgment on the validity and infringement claims, in the interest of sound judicial administration; the court vacates its February 18, 1988 ruling, and denies 3M's motion for certification in total.

---

* The court notes 3M moved for severance of     RMI's antitrust counterclaims.