**Kerry PATRICK, Plaintiff,**

v.

**CITY OF OVERLAND PARK, KANSAS, et al., Defendants.**

**No. 95–2621–KHV.**

United States District Court, D. Kansas.

June 21, 1996.

Mark A. Buchanan, Dennis E. Egan, The Popham Law Firm, Kansas City, MO, for Kerry Patrick.

Gregory L. Ash, Spencer, Fane, Britt & Browne, Kansas City, MO, J. Nick Badgerow, Spencer, Fane, Britt & Browne, Overland Park, KS, for City of Overland Park, Kansas, Edward Eilert.

Robert J. Hoffman, Bryan Cave LLP, Kansas City, MO, James L. Eisenbrandt, Bryan Cave LLP, Overland Park, KS, for Myron Scafe.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on the *Motion of Defendants City of Overland Park, Kansas and Edwin C. Eilert to Dismiss Plaintiff's First Amended Complaint* (Doc. # 32) filed April 17, 1996, and on *Defendant Myron Scafe's Motion to Dismiss Plaintiff's Amended Complaint* (Doc. # 35) filed April 22, 1996. Plaintiff brings this action under 42 U.S.C. § 1983, alleging that defendants, acting under color of state law, deprived him of constitutionally protected rights of privacy, due process and freedom of association. In addition, plaintiff asserts a state law invasion of privacy claim.

Defendants ask the Court to dismiss plaintiff's claims because (1) plaintiff has failed to allege facts which support his assertion that he was deprived of constitutionally protected rights; (2) plaintiff has not alleged facts that would make the City liable for any injuries which plaintiff claims to have suffered; (3) defendant Scafe is qualifiedly immune from suit on plaintiff's § 1983 claim because plaintiff has failed to allege facts which establish that Scafe violated any of plaintiff's clearly established constitutional rights; and (4) plaintiff has failed to state a common law tort claim for invasion of privacy and the Court lacks independent subject matter jurisdiction over that claim.

### Background

Defendant Edward Eilert, Mayor of Overland Park, served as campaign manager for U.S. Congresswoman Jan Meyers during the 1992 and 1994 elections. Plaintiff claims that during 1994 Eilert and other Republican party activists suspected that plaintiff might run against Meyers in the Republican primary election for the U.S. House of Representatives.

Plaintiff alleges that during 1994, Eilert "and/or . . . other persons who were misusing their official office . . . to gain access to confidential official records" solicited, induced or directed defendant Myron Scafe, Chief of Police of Overland Park, to conduct a criminal history record check, including a complete criminal investigation, on plaintiff. Scafe, in turn, allegedly ordered a police captain and Overland Park police detectives to execute the search. Plaintiff contends that the search was motivated solely by defendants' hopes of finding damaging information which could be used against plaintiff in a potential political campaign and that they had no legitimate law enforcement need or justification for the criminal history check.

Under the Kansas Criminal History Record Information Act, a criminal justice

agency may not request information on a citizen's criminal record from a central repository or another criminal justice agency "unless it has a legitimate need for the information." K.S.A. § 22-4707. A person who violates that law is guilty of a class A misdemeanor. K.S.A. § 22-4707(c).

Although the criminal records check did not reveal any prior criminal activity by plaintiff, the investigation did uncover a "long-closed" and "highly sensitive, non-public file" which contained information regarding a sexual relationship between plaintiff's former stepdaughter (who was then a minor) and a minister in her former church. Plaintiff alleges that defendants received, reviewed, published and disclosed such information, though the complaint does not make clear how the information was published or to whom it was disclosed.[1]

Plaintiff claims that Scafe told Eilert that he had conducted the search in an attempt to verify rumors that plaintiff was guilty of child molestation. Plaintiff asserts that Scafe's purpose in searching for this information was to disseminate to the public for political purposes the false and malicious assertion that plaintiff had been involved in a sexual relationship with his stepdaughter and that such relationship was the reason for plaintiff's divorce in 1986.

Plaintiff contends that Scafe, as Chief of Police, was not subject to any restrictions or control of his day-to-day activities and was the highest policymaking executive in the Overland Park Police Department. Plaintiff further alleges that Scafe has engaged in a pattern and practice of misusing his position to conduct or authorize background checks on others as well as plaintiff.

Plaintiff alleges that when members of the City Council learned of Scafe's conduct, it met in executive session to consider what action to take. The Council asked Johnson County District Attorney Paul Morrison whether his office had jurisdiction over potential criminal violations, but ultimately determined the matter should be handled internally. The City eventually disciplined or reprimanded Scafe but did not terminate his employment. The City did not institute remedial or punitive action against Eilert.

Plaintiff claims that the criminal records check violated his constitutional rights to privacy, freedom of political association and due process. He also claims that defendants are liable for invasion of privacy under Kansas law.

### Discussion

In ruling on a motion to dismiss for failure to state a claim, the Court assumes the truth of all well-pleaded facts in plaintiff's complaint and views them in the light most favorable to plaintiff. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). All reasonable inferences must be drawn in favor of plaintiff, and the pleadings must be liberally construed. *Id.; Gas-A-Car, Inc. v. American Petrofina, Inc.,* 484 F.2d 1102, 1107 (10th Cir.1973). The issue in reviewing the sufficiency of the complaint is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Motions to dismiss are disfavored, and the Court may not dismiss a case for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Bangerter v. Orem City Corp.,* 46 F.3d 1491, 1502 (10th Cir.1995).

Fed.R.Civ.P. 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not be factually detailed but it must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103. While a plaintiff is not required to state each element of the claim precisely, Rule 8(a) nonetheless requires minimal factu-

---

1. The complaint alleges that Scafe "shared the information to persons or entities who could not on their own obtain information through a criminal records investigation."

al allegations on those material elements that must be proved in order for the plaintiff to recover. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

## I. Due Process Right to Privacy

■ Plaintiff claims that defendants deprived him of substantive due process rights by impinging upon his right to privacy. Cases involving the right to privacy address two different kinds of interests: "the individual interest in avoiding disclosure of personal matters, and ... the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 598–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). We deal here with the first type of privacy interest.

■ The Tenth Circuit has held that "[d]ue process ... implies an assurance of confidentiality with respect to certain forms of personal information possessed by the state." *Sheets v. Salt Lake County*, 45 F.3d 1383, 1387 (10th Cir.), *cert. denied*, ── U.S. ──, 116 S.Ct. 74, 133 L.Ed.2d 34 (1995), quoting *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir.1986). Information is subject to this constitutional protection when an individual has a "legitimate expectation ... that it will remain confidential while in the state's possession." *Id.* The legitimacy of the individual's expectation depends, at least in part, on "the intimate or otherwise personal nature of the material which the state possesses." *Id.* If the individual's expectation of confidentiality is legitimate, then disclosure of such material "must advance a compelling state interest which, in addition, must be accomplished in the least intrusive manner." *Id.*

Defendants do not contend that they had a compelling state interest in conducting the alleged search or disclosing its results. We therefore focus on whether plaintiff had a legitimate expectation of privacy in the information. Defendants contend that he did not. They first assert that the information was about plaintiff's former stepdaughter, so that any privacy interest in such information belongs to her and not to plaintiff. They next contend that plaintiff can have no legitimate expectation of privacy in police records.

### A. Standing to Assert Privacy Interest

At the outset, defendants argue that plaintiff has alleged no violation of his own right to privacy and that, if any privacy interests are implicated at all, the interests are those of plaintiff's former stepdaughter and not those of plaintiff. In short, defendants maintain that plaintiff has no standing to assert a privacy interest in the information that the search revealed about his stepdaughter.

While the constitutional right to privacy is a matter of federal law, courts sometimes look to common law principles for guidance on the scope of this right. *See Sheets*, 45 F.3d at 1388 n. 1 (looking to the Restatement (Second) of Torts § 652D as informing the right to privacy). The Restatement (Second) of Torts instructs that the right of privacy

> is a personal right, peculiar to the individual whose privacy is invaded.... [I]t cannot be maintained by other persons such as members of the individual's family, unless their own privacy is invaded along with his.

Restatement (Second) of Torts § 652I cmt. a (1977). *See also* 62A Am.Jur.2d, Privacy § 20 ("The right of privacy is a purely personal one.... The general rule is that even a close relative may not recover for the invasion of privacy of another."). The policy behind the general rule denying standing to those personally unaffected by the invasion of privacy is obvious:

> [T]o permit recovery to a third person who was only incidentally involved in the publicity would open the courts to those whose only relation to the asserted wrong is that they are related to the victim of the wrongdoer and therefore brought unwillingly into the limelight, so that every defamation, false imprisonment, and malicious prosecution would then be an actionable invasion of the privacy of the relatives of the victim.

*Id.* at § 26.

In *Sheets*, plaintiff claimed that defendants violated his right to privacy when they disclosed portions of his deceased wife's diary, which plaintiff had given to a law enforcement agent under an alleged promise of

confidentiality to assist in the criminal investigation of her murder. The district court denied defendants' motion to dismiss, and the Tenth Circuit affirmed. The point was not that plaintiff had an interest in avoiding disclosure of his wife's general thoughts and feelings, the Tenth Circuit explained, but that plaintiff himself had an interest "in avoiding disclosure of things personal to him, such as his wife's written perceptions of their marriage." *Sheets,* 45 F.3d at 1388. In so noting, the Tenth Circuit indicated that an individual may have a privacy interest in information which is not authored by or principally concerned with that individual, so long as the information touches on personal aspects of the individual's life and is subject to a reasonable expectation of privacy. *See id.*

In his complaint, plaintiff in this case alleges that information "centering on" his stepdaughter was revealed in the course of defendants' investigation; his complaint does not, as defendants attempt to recast it, state that the information related solely to his stepdaughter. However, while plaintiff has alleged injury personal to himself as a result of defendants' disclosure, he has not alleged that any information *about him* was actually disclosed. Plaintiff claims that he does not know the exact contents of defendants' file pertaining to the investigation because such information is uniquely in defendants' possession and the contents of the file will remain unknown until plaintiff has an opportunity to conduct discovery. Therefore plaintiff claims that he cannot allege with more particularity what information personal to him was included in the file.

The Court is aware that in ruling on a motion to dismiss, it must take all factual allegations as true and make all reasonable inferences in favor of plaintiff. Here, however, plaintiff has not pled facts which support a claim, or even facts from which inferences could be drawn to support a claim. The Court may not speculate on what facts might exist that could possibly entitle plaintiff to relief. *See Haverkamp v. Unified Sch. Dist. # 380,* 689 F.Supp. 1055, 1060 (D.Kan.1986). From the pleadings, it is completely unclear whether plaintiff was in any way involved in the investigation of his stepdaughter's relationship with the minister; to what degree he was involved, if any; and the nature of his relationship with the victim at the relevant times.[2] Under these circumstances, the Court cannot reasonably infer that information personal to plaintiff is included in the file that was allegedly uncovered by defendants' wrongful search.

Fed.R.Civ.P. 8(a) does not require plaintiff's statement of the claim to be factually detailed, but the statement "must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103. Rule 8(a) requires minimal factual allegations on material elements that must be proved in order for the plaintiff to recover. *Hall,* 935 F.2d at 1110. In order for plaintiff to show that his constitutional privacy interest was impaired, he must demonstrate that defendants failed to keep private information *personal to him* which he legitimately expected would remain confidential while in the state's possession.[3] Plaintiff has not set

2. For instance, the pleadings alternatively refer to plaintiff's "former stepdaughter" and to his "stepdaughter." It is unclear whether the woman was plaintiff's stepdaughter at the time of her relationship with the minister, at the time of the investigation, and/or at the time defendants allegedly disclosed information about her.

3. The state law restriction on circumstances under which criminal justice agencies may request criminal history information, K.S.A. § 22–4707(a), to which plaintiff refers in his complaint, does not create or demonstrate a federal privacy interest:

While state statutes and regulations may inform our judgment regarding the scope of constitutional rights, they "fall far short of the

kind of proof necessary" to establish a reasonable expectation of privacy.
*Nilson v. Layton City,* 45 F.3d 369, 372 (10th Cir.1995), quoting *Flanagan v. Munger,* 890 F.2d 1557, 1571 (10th Cir.1989). Mere allegations that an official failed to abide by state law do not suffice to state a constitutional claim. *Nilson,* 45 F.3d at 372. In order to maintain an action under § 1983, plaintiff must establish that defendants deprived him of a right premised in the Constitution or federal laws and that they achieved such deprivation while acting under color of law. *Doe v. Bagan,* 41 F.3d 571, 573–74 (10th 1994). Thus, plaintiff's allegation that the search conducted on his criminal history background violated Kansas law is not pertinent to his claims under § 1983; those claims must

forth minimal factual allegations on that crucial point. Consequently, he has not given defendants fair notice of the grounds upon which his privacy claim rests. Because plaintiff has not met the bare requirements of Rule 8(a), the Court cannot allow his constitutional claim for invasion of privacy to go forward. To do so would unfairly prejudice the defendants and require them to defend against sketchy and apparently baseless allegations.

### B. Criminal History Information

Defendants also argue that as a matter of law, plaintiff can have no legitimate expectation of privacy in information contained in police records and that his privacy claim must therefore be dismissed. Because the Court has found that plaintiff has failed to adequately allege a constitutional invasion of his right to privacy, it need not address defendants' arguments regarding the scope of that right at this time.

### II. First Amendment Claim

Defendants argue that plaintiff's complaint must be dismissed because while it mentions the right to freedom of association guaranteed by the First Amendment, it does not attempt to explain how that right may have been infringed or "chilled" by defendants' conduct. Defendants acknowledge that plaintiff has the constitutional right to associate freely, to seek office, and to voice his political views. However, defendants argue that the complaint makes no allegation that they prevented him from doing so. Defendants contend that plaintiff's allegations are merely conclusory and thus cannot support a First Amendment claim because plaintiff's complaint does not identify a person or group of persons with whom he was prohibited from associating, nor does it identify any protected activity in which he was prohibited from engaging by reason of defendants' conduct.

 In so arguing, however, defendants have overlooked the fact that plaintiff's complaint alleges that his "First Amendment right of association and to be a political can-

didate is and was chilled" by defendants' alleged criminal records check. The right of expressive association protects the freedom to associate for the purpose of engaging in activities protected by the First Amendment. *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir.1994). In order to establish his First Amendment claim, plaintiff must prove wrongful conduct by defendants and that such conduct had a chilling effect on plaintiffs' associational rights. *National Commodity and Barter Ass'n v. Archer*, 31 F.3d 1521, 1531 n. 4 (10th Cir.1994). In order to overcome a motion to dismiss, plaintiff need only allege those elements. Plaintiff has done so. He is not at this time required, as defendants seem to argue, to specify individuals with whom he was prevented from associating or list specific activities in which he was prevented from participating. As in *National Commodity and Barter Ass'n*, plaintiff has alleged specific actions by governmental employees, and the alleged chilling effect is "readily apparent." *See id.* at 1530. Plaintiff here has alleged that he was a target of defendants' illegal investigation, and he has alleged harm resulting from that investigation. Those allegations are enough to prevail against defendants' motions to dismiss and entitle plaintiff to conduct discovery. If, after having had a chance to develop the facts, he cannot prove any set of facts that would supply a basis for the allegations in his complaint, defendants may prevail on summary judgment motions.

### III. Liability of Defendant Eilert

 Plaintiff has acknowledged that he cannot state a claim against defendant Eilert in his official capacity. Since official capacity suits are treated in all respects as suits against the underlying entity, any suit against Mayor Eilert in his official capacity is redundant because plaintiff has also sued the City of Overland Park. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"); *Monell v. Dep't of Social*

stand or fall with reference to constitutional law and not to Kansas law.

*Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2036 n. 55, 56 L.Ed.2d 611 (1978) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"). Plaintiff thus concedes that his suit against Eilert in his official capacity should be dismissed.[4]

Defendants assert that plaintiff's suit against Eilert in his individual capacity should also be dismissed on the merits because plaintiff has not stated a claim upon which relief can be granted. Defendants rely on the arguments set forth above. For reasons previously discussed, the Court sustains defendants' motion as to plaintiff's due process right to privacy claim, but denies it as to plaintiff's First Amendment claim.

## IV. Liability of Defendant Scafe

Defendant Scafe contends that he is protected from suit in this case by the doctrine of qualified immunity. That doctrine provides that government officials performing discretionary functions are shielded from civil liability for their conduct unless their actions violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Hilliard v. City and County of Denver,* 930 F.2d 1516, 1518 (10th Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 656, 116 L.Ed.2d 748 (1991).

■ Once a defendant pleads qualified immunity, plaintiff initially bears a heavy two-part burden. *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir.1995), citing *Hannula v. City of Lakewood,* 907 F.2d 129, 130–31 (10th Cir.1990). First, plaintiff must demonstrate that defendant's actions violated a constitutional or statutory right. *Romero v. Fay,* 45 F.3d 1472, 1475 (10th Cir.1995). Second, plaintiff must show that such constitutional or statutory right was clearly established at the time of the conduct at issue. *Albright,* 51 F.3d at 1534–35, citing *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3020–21, 82 L.Ed.2d 139 (1984). To be clearly established, "[t]he contours of the right

must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Although it is not necessary that the exact action in question have been previously held unlawful, "in the light of pre-existing law the unlawfulness must be apparent." *Id.*

■ Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992), citing *Stewart v. Donges,* 915 F.2d 572, 582–83 & n. 14 (10th Cir.1990).

If plaintiff fails to carry either part of his two-part burden, defendant is entitled to qualified immunity. *E.g., Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 646 (10th Cir.1988). Thus defendant is entitled to qualified immunity if plaintiff fails to show that the law was clearly established. *See, e.g., Pallottino v. City of Rio Rancho,* 31 F.3d 1023, 1026 (10th Cir. 1994) (defendant entitled to qualified immunity because plaintiff failed to show the law was clearly established that a witness may ignore police requests at the scene of an investigation for his name and address); *Medina,* 960 F.2d at 1498 (defendant entitled to qualified immunity because plaintiff failed to show it was clearly established that recklessness could give rise to liability under § 1983 and that a police officer could be liable under § 1983 for injuries caused by a fleeing suspect).

■ Defendant's arguments regarding qualified immunity focus on the lack of clarity in the case law governing plaintiff's privacy claim. However, defendant does not argue that the law governing plaintiff's First Amendment claim was unclear, nor could he. Since at least 1972, it has been clearly established that "governmental action may be sub-

---

4. Although defendant Scafe has not raised this point with respect to plaintiff's claim against him in his official capacity and plaintiff has not conceded it, the Court finds that the identical analysis applies to Eilert and Scafe in their official capacities. Therefore, the Court will also dismiss plaintiff's complaint against Scafe in his official capacity.

ject to constitutional challenge even though it has only an indirect effect on the exercise of First Amendment rights," so long as the challenging individual has alleged that he has sustained or is in immediate danger of sustaining a direct injury as a result of that governmental action. *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972). Because plaintiff has alleged a violation of a constitutional right and a direct injury resulting from that violation, dismissal of plaintiff's claim on grounds of qualified immunity would be inappropriate at this time.

### V. Liability of Defendant City of Overland Park

Plaintiff's amended complaint purports to impose liability on the city on three bases: (i) the doctrine of *respondeat superior;* (ii) the alleged final policymaking authority of Scafe; and (iii) ratification of Scafe's conduct by Eilert and the city. Defendants argue that the city may not be held liable under any of these theories.

#### A. *Respondeat Superior*

As to the first theory, defendants are clearly correct. As plaintiff now concedes, municipalities may not be subjected to liability under § 1983 under the *respondeat superior* doctrine. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Thus, the city cannot be liable merely for employing a violator of federal rights.

#### B. Final Policymaking Authority

A municipality may be subject to liability for an act of an employee only if the employee has been delegated "final authority" under state law to establish policy with respect to the challenged action. *Jantz v. Muci,* 976 F.2d 623, 630 (10th Cir.1992), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). If, however, the employee's superior "retains the authority to review, even though [he or she] may not exercise such review or investigate the basis of the decision, delegation of final authority does not occur." *Id.* at 631.

Defendant alleges that Scafe lacked final policymaking authority with respect to the search executed in this case because the Overland Park City Manager retains the authority to review acts of the police chief under Overland Park City Code §§ 2.66.010 (City Manager appoints Chief of Police, who is subject to removal by the City Manager for neglect of duty or other proper cause as provided by law) and 2.66.100 (all police officers are subject to the orders of their superiors).

To determine whether an individual is vested with final policymaking authority, we must examine the legal chain of authority. *Jantz,* 976 F.2d at 631. In so doing, it is important to remember that any review procedure or constraints must be meaningful, as opposed to merely hypothetical, in order to strip an official of final policymaking authority. *Randle v. City of Aurora,* 69 F.3d 441, 449 (10th Cir.1995). The Tenth Circuit has provided three elements to consider in determining whether an official has final policymaking authority: (1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decisions are final, that is, not subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority. *Id.* at 448.

State and local law govern the Court's determination whether defendant Scafe in his position as chief of police was vested with final policymaking authority. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 482–83 & n. 12, 106 S.Ct. 1292, 1299–1300 & n. 12, 89 L.Ed.2d 452 (1986). In identifying local officials who are responsible for the challenged action or policy, the Court reviews relevant legal materials, including state and local positive law, as well as custom or usage having the force of law. *Ware v. Unified Sch. Dist. No. 492, Butler County, State of Kan.,* 902 F.2d 815, 817 (10th Cir. 1990), citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723–24, 105 L.Ed.2d 598 (1989).

Courts have often recognized that the final decisionmaking or policymaking authority of police chiefs and sheriffs may be such that

their actions are deemed to be those of the governmental bodies they represent. *Munz v. Ryan*, 752 F.Supp. 1537, 1550 (D.Kan. 1990) (finding police chief was obvious official who might speak with final authority regarding searches carried out by city police force). *See also Flanagan v. Munger*, 890 F.2d 1557, 1568–69 (10th Cir.1989) (finding police chief had direct management and supervision over disciplinary matters and, though his authority to set policy was generally subject to review by city manager and city council, was therefore final policymaker with respect to reprimands issued against subordinate officers); *Ross v. Neff*, 905 F.2d 1349, 1355 (10th Cir.1990) (county sheriff's belief that arrests on Indian land were legal would permit jury to find policy allowing county officers to make arrests there); *Meade v. Grubbs*, 841 F.2d 1512, 1530 (10th Cir.1988) (county sheriff responsible for establishing policy regarding use of force); *McKay v. Hammock*, 730 F.2d 1367, 1375 (10th Cir.1984) (in § 1983 suit based on wrongful arrest and harassment, county sheriff was responsible for policies and procedures of sheriff's office, and sheriff's office could therefore be held liable for constitutional deprivation); *Lee v. Wyandotte County*, 586 F.Supp. 236, 241 (D.Kan. 1984) (county sheriff was elected official "whose edicts or acts may fairly be said to represent official policy").

■ The Court is not satisfied that the Overland Park city code provides meaningful review of Scafe's policy decisions or actions in this case. Nothing in the record suggests that Scafe lacked policymaking authority with respect to the conduct of criminal history background searches. Therefore, the Court is unpersuaded that Scafe's professed lack of policymaking authority shields the City of Overland Park from liability for the alleged violation of plaintiff's constitutional rights.

#### C. Ratification

■ In his complaint, plaintiff contends that even if Scafe was not a final policymaker, the City of Overland Park ratified the criminal history records search and is therefore liable for Scafe's conduct. Plaintiff has not alleged, however, that Mayor Eilert or any other identified agent of the city took affirmative action to ratify or approve the criminal records search. In fact, plaintiff alleges that the City disciplined or reprimanded Scafe in connection with the search. Plaintiff's apparent complaint is that the City did not fire Scafe for his involvement in the search.

■ In order to impose liability under § 1983 on a theory of ratification, plaintiff must allege more than mere acquiescence by a final policymaker in a subordinate's actions. *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir.), *cert. denied*, 510 U.S. 826, 114 S.Ct. 90, 126 L.Ed.2d 57 (1993). Plaintiff must allege and prove that the final policymaker affirmatively approved the particular action of the subordinate. *Id.* Since plaintiff has not alleged facts which support a finding of ratification—and indeed has alleged facts which suggest the precise opposite—his complaint is insufficient to impose liability under § 1983 on the City on that basis. In view of our ruling with respect to Scafe's position as a final policymaker, however, the Court need not address this argument at further length.

### VI. State Law Claim

In Count II of his complaint, plaintiff asserts a claim against Scafe for invasion of privacy under Kansas law. Tracking the language of the Restatement (Second) of Torts § 652B, the Kansas Supreme Court in 1973 recognized invasion of the right of privacy as a tort upon which a cause of action may be based:

> 'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable man.'

*Froelich v. Adair*, 213 Kan. 357, 358, 516 P.2d 993 (1973). Defendant argues that Count II should be dismissed because Scafe is absolutely immune from liability under the Kansas Tort Claims Act, K.S.A. § 75–6104(e), and the principles of common law

enunciated in *Sampson v. Rumsey*, 1 Kan. App.2d 191, 563 P.2d 506 (1977).

> The Kansas Tort Claims Act provides that A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from ... any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved....

K.S.A. § 75–6104(e). In *Robertson v. City of Topeka*, 231 Kan. 358, 644 P.2d 458 (1982), the Kansas Supreme Court applied the Kansas Tort Claims Act. In *Robertson*, plaintiff called the police to report that an intoxicated man was on his property and would likely set fire to his house if the police did not remove him from the premises. Three officers responded to the call, assessed the situation, and directed plaintiff to leave the premises instead of the intruder. Thereafter the intruder burned plaintiff's house. In granting immunity to the officers, the Kansas Supreme Court noted that police officers performing their duties are entitled to immunity under the Kansas Tort Claims Act unless specific guidelines or departmental rules remove the discretion from an officer's day-to-day conduct. *Id.* at 362, 644 P.2d 458. The Kansas Supreme Court stated that "[a]bsent such guidelines, police officers should be vested with the necessary discretionary authority to act in a manner which they deem appropriate without the threat of potentially large tort judgments against the city, if not against the officers personally." *Id.*

■ This case is quite different from *Robertson* because Scafe, in conducting the alleged investigation, was not required to exercise discretionary authority. Under the Kansas Criminal History Record Information Act, a criminal justice agency may not request information on a citizen's criminal record from a central repository or another criminal justice agency "unless it has a legitimate need for the information." K.S.A. § 22–4707. No exercise of discretion is required (or permitted) where the requesting agency lacks a legitimate need for the information. Plaintiff alleges that defendant had no legitimate need to search his criminal

history background, and defendant has not claimed that such a need existed. Therefore the immunity afforded by the Kansas Tort Claims Act is inapplicable to the claims at issue here.

■ Common law immunity is likewise inapplicable. In *Sampson v. Rumsey*, 1 Kan. App.2d 191, 563 P.2d 506 (1977), a case which defendant likens to this one, the trial court dismissed plaintiff's claim that the Sedgwick County district attorney had abused his office by investigating the plaintiff's private and business affairs without a legitimate law enforcement purpose. The Kansas Court of Appeals affirmed, stating that "the power of the district attorney to investigate alleged violations within his jurisdiction is unquestionable and his motive in doing so may not be the subject of a lawsuit against him." *Id.* at 197, 563 P.2d 506. Scafe argues that like the district attorney in *Sampson,* he had an official responsibility to inquire into suspected violations of law. Not only did he have the authority to conduct investigations, he asserts, he also had an obligation to do so if he suspected criminal wrongdoing. While this assertion is undoubtedly true, plaintiff has alleged that Scafe was not investigating any alleged violation or inquiring into any suspected criminal wrongdoing and that his inquiry was for partisan political purposes rather than legitimate law enforcement purposes. *Sampson* is therefore inapplicable to this case, and common law immunity is inappropriate.

■ Finally, defendant argues that under 28 U.S.C. § 1367(c)(1) the Court should decline to exercise jurisdiction over plaintiff's state law claim because it presents novel and complex issues of state law. Defendant contends that the invasion of privacy action alleged in plaintiff's complaint is discussed in only a handful of Kansas cases and that none of them involves the complete "discretionary function" defense afforded by the Kansas Tort Claims Act, K.S.A. § 75–6104(e). Consequently, defendant urges this Court to refrain from exercising supplemental jurisdiction over plaintiff's state law claim.

The facts comprising plaintiff's federal and state claims are substantively identical. The witnesses and documentary evidence will also be the same. Referring plaintiff's state law

claim to state court while retaining jurisdiction over plaintiff's federal claim will not serve the interests of judicial economy. The state law issues in this case are not so novel or complex as to warrant taxing the judicial system in that way. Accordingly, the Court declines defendants' invitation to refuse to exercise jurisdiction under 28 U.S.C. § 1367(c)(1) over plaintiff's state law claim for invasion of privacy.

**IT IS THEREFORE ORDERED** that the *Motion of Defendants City of Overland Park, Kansas and Edwin C. Eilert to Dismiss Plaintiff's First Amended Complaint* (Doc. #32) filed April 17, 1996, and *Defendant Myron Scafe's Motion to Dismiss Plaintiff's Amended Complaint* (Doc. #35) filed April 22, 1996, be and hereby are sustained with respect to plaintiff's § 1983 claim for violation of his due process right to privacy. In all other respects, such motions are overruled.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendant Edwin C. Eilert and defendant Myron Scafe in their official capacities be and hereby are dismissed.